[No. 19627. Department Two. April 5, 1926.]

OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Respondent,* v. PACIFIC COAST RAILROAD COMPANY, *Appellant.*[1]

[1] RAILROADS (30, 31)—CROSSING HIGHWAYS—RAILWAY VIADUCT OVER STREETS—APPORTIONMENT OF COSTS. A just, fair and equitable apportionment between railroads, for the cost of an approach to a viaduct used by them jointly is the same basis which the parties themselves fixed by agreement for the payment of the cost of the span; in this case, the proportion of the width of the structure used by each.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered June 6, 1925, upon findings in favor of the plaintiff, in an action to recover a proportion of the cost of approaches to a viaduct over city streets, after a hearing before the court. Reversed.

'Reported in 244 Pac. 673.

*Stratton & Kane,* for appellant.

*Huffer, Hayden, Merritt, Summers & Bucey,* for respondent.

*Graves, Kizer & Graves, amici curiae.*

MACKINTOSH, J.—Prior to 1908, the Northern Pacific Railway Company and the Pacific Coast Railroad Company had parallel rights of way across First avenue south in the city of Seattle. In that year, the Oregon-Washington Railroad & Navigation Company, or its predecessor, obtained a franchise from the city of Seattle for the construction of tracks on a right of way paralleling the rights of way of the other two roads across First avenue south. According to that ordinance, it was provided that the Oregon-Washington company, at its own expense, should erect and maintain a viaduct on First avenue south over the rights of way of the three companies, and, when necessary, should re-construct or renew it. Pursuant to this ordinance, the Oregon-Washington company constructed the overhead bridge and maintained it until 1922, when the city of Seattle determined it was necessary to replace the then structure with another temporary structure, which it was estimated would serve until 1928.

An ordinance was passed authorizing and directing the erection of this new structure, and a contract was entered into between the city and the Oregon-Washington company by which the company agreed to construct and pay for the structure. Thereupon, the Oregon-Washington company, the Northern Pacific company and the Pacific Coast company agreed that, if the Oregon-Washington company should build the structure and should pay the cost thereof, the Northern Pacific company and the Pacific Coast company should each pay to the Oregon-Washington company its just,

fair and equitable proportion of such cost. It was agreed that the just, fair and equitable proportion of the cost of the portion of the structure over the rights of way themselves was such proportion of the cost of that portion of the structure as the width of the respective rights of way, spanned by that portion of the structure, bore to the total width of the combined rights of way covered by that portion of the structure. The testimony shows that the right of way of the Northern Pacific company was 46.12 feet wide, of the Pacific Coast company 46.12 feet wide, and of the Oregon-Washington company 1134.53 feet wide. Under this arrangement, the Northern Pacific company and the Pacific Coast company each paid to the Oregon-Washington company 3.76 per cent of the cost of that portion of the structure, and the Oregon-Washington has therefore paid 92.48 per cent thereof. The approaches to the viaduct were paid for entirely by the Oregon-Washington company, and it has demanded that the Northern Pacific company and the Pacific Coast company each pay one-third of the cost of the approaches. The Pacific Coast company refusing to pay this proportion of the cost and insisting that the just, fair and equitable proportion should be measured by the same scale as was the portion of the structure directly over the rights of way, this action was begun to recover one-third of the cost of the two approaches, and the question before the court is—what is the just, fair and equitable proportion of the cost of the approaches to be borne by the Pacific Coast company, the appellant.

[1] When a viaduct or overhead crossing of the nature of this one here is suggested, it does not come to mind that there is any legal or physical distinction between the portion of the edifice which is constructed immediately over the objects sought to be crossed and

the approaches that lead to that part of the edifice. What is called the bridge proper and the approaches are, in ordinary contemplation, all one structure. Either part, without the other, would be incomplete and useless. The thought that they should be separated, for the purpose of determining the proper apportionment of their cost, is a thought which is not likely to occur to one, viewing the situation without the aid of the ingenuity of experts. Ingenious is very often a synonym for unfair. The primary presumpion would seem to be that, if the roads themselves determined that that portion of the stucture, which may be called the bridge proper, should be paid for in proportion to the rights of way crossed, then the rest of the bridge should be paid for on the same basis; that such an arrangement would be just, fair and equitable.

The roads themselves have determined for many years that this arrangement was the proper one under the circumstances. In 1904 the Oregon-Washington company, the Pacific Coast company and the Northern Pacific company constructed another viaduct in Seattle, each company paying the cost of the span and approaches on the basis of the width of their respective rights of way. In 1909, the Pacific Coast, Oregon-Washington, Northern Pacific and Chicago, Milwaukee & St. Paul companies built a viaduct in Seattle on this basis.

In the same year, the Oregon-Washington, Northern Pacific, Pacific Coast and Chicago, Milwaukee & St. Paul built another viaduct in Seattle, paying for the entire structure on the basis of the width of their respective rights of way. According to the testimony, the Interstate Commerce Commission values the approaches and bridge spans on the basis of the width of the rights of way. In 1910, the Great Northern

Railway Company and the Oregon-Washington company built a viaduct in Spokane, paying for it on the basis of their rights of way. When the first temporary viaduct on First Avenue South was built by the Oregon-Washington company, that company divided the expense with the Northern Pacific, each paying for the entire structure, including span and approaches, substantially in proportion to the widths of their rights of way.

Another overhead crossing in Seattle, in which four railroads were interested, was paid for, both span and approaches, on the right of way basis. Other instances are—a viaduct in Tacoma crossing the Northern Pacific and Oregon-Washington companies' rights of way, where the cost of the entire structure was borne in proportion to the widths of the rights of way; another overhead crossing in Seattle, the Northern Pacific company and the Great Northern company paying for the entire structure in proportion to the rights of way crossed; another overhead bridge crossing the tracks of the same two companies, the cost being borne in the same way. This custom seems to have prevailed up to 1916, when a tentative agreement, which is called in the record the "unsigned agreement," was drawn up between the Northern Pacific, Oregon-Washington, Great Northern, Chicago, Milwaukee and Pacific Coast companies, overturning that custom, that agreement stating that "the parties to this agreement recognize that there is no fixed principle for a division of the cost of building such structures that is uniformly just and equitable when applied to the varying circumstances of different cases." It then proceeds to state that it is necessary for the parties to agree upon a plan which will "produce relatively just results," "at least when applied uniformly over a period of years;" the

agreement to be binding upon all the roads for twenty years throughout this state. The basis of paying for such structures, under this agreement, was that the cost of the approaches should be paid for in equal share and that the span should be paid for approximately in proportion to the rights of way. This agreement was not signed by the Pacific Coast company.

One reason, probably, for the refusal of this company to sign the proposal was that it was purely a local road, having a very short trackage and existing only in King county in this state, whereas the other parties to the proposed agreement have trackage throughout the state, and, while the proposal might be disadvantageous to one road in a certain locality, it might work to the advantage of that road in some other locality, and, as the contract says, would thus "produce relatively just results;" whereas, as the only place the Pacific Coast company would probably be called on, or at least the principal place where it would be called on, to share the cost of overhead crossings would be in the city of Seattle, the agreement could never produce relatively just results, nor would that company ever have an opportunity to make up for an excessive burden imposed on it in one place by the escape from a large payment in some other locality.

Notwithstanding the primary idea that span and approaches are all one entity, and that they have been so considered for a number of years by the various parties to this litigation, half a dozen experts were called to testify in behalf of the Oregon-Washington company that the just, fair and equitable distribution of the cost of the approaches was one-third to each of the companies whose tracks were spanned. There is expert testimony to the contrary, as might be anticipated. This testimony, that attempted to justify

the respondent's theory, is somewhat minimized by the fact that two of the principal experts, testifying that this method was the proper one, were at one time chosen as arbitrators to make a just, fair and equitable distribution of the costs of a viaduct, consisting of span and approaches, in the city of Seattle, across parallel rights of way owned by different companies, and there distributed the cost in proportion to the rights of way of the companies affected. If, when they had taken an oath to justly, fairly and equitably distribute the costs in that instance, they distributed them according to the method contended for by the appellant, they were adopting a basis which it is reasonable to believe was to their minds the proper one to apply in a case such as this. It would be manifestly unfair and unjust to place the burden upon the Pacific Coast company in view of the local conditions and circumstances already referred to.

It is claimed, however, that this court has already committed itself to the theory that the cost of approaches to overhead crossings should be apportioned equally to all the roads passing underneath the span, and that that was the holding in *State ex rel. Seattle v. Northern Pacific R. Co.*, 128 Wash. 73, 221 Pac. 991. There the court was passing upon the apportionment of the cost of the approaches to a viaduct in the city of Seattle over rights of way owned by the Great Northern, Northern Pacific, Oregon-Washington and the Chicago, Milwaukee & St. Paul railways. The city had passed an ordinance providing for the viaduct and directing those railway companies to construct it at their own expense. The companies being unable to agree among themselves as to the distribution of the cost, the city, by ordinance, apportioned the cost of the span according to the relative widths of the rights

of way, but the cost of the approaches was to be paid for equally by the four companies. The Chicago, Milwaukee & St. Paul refused to comply with the apportionment made by the city ordinance, and suit was brought to compel the construction of the viaduct according to the terms of the ordinance. This court held that the viaduct should be so constructed and paid for. The concluding paragraph of the opinion is:

"Believing the apportionment to be just, fair and equitable, the judgment will be affirmed."

And it is upon this language that the respondent must rely in asserting that this court has decided that this method of distributing the cost of approaches to overhead crossings is a just, fair and equitable one. An examination of the opinion, however, has shown that the court said:

"There is no definite rule for the apportionment of costs for either the main structure or the approaches."

And again,

"We are unable to say that the apportionment based upon the width of the rights of way actually in use by the respective railways is arbitrary or discriminatory."

All that that case really held, and all that the court was called upon to hold, was that, under the record there reviewed, it would not disturb the apportionment fixed by the city council, because "we cannot say that it acted arbitrarily or capriciously." This court was not called upon in that case to determine for itself what was a just, fair and equitable distribution. The sole thing that the court could do, was to say whether the distribution made by the city council was so arbitrary and unfair that it could not be sustained. Two entirely different questions.

The phrase quoted by the respondent from the Yesler Way case is not necessary to the opinion, and,

moreover, it may have been justified by the facts in that particular case; for, as this court has said, and the parties themselves, there is no fixed principle that is "uniformly just and equitable when applied to the varying circumstances of different cases." The question determining the Yesler Way case was one of law, and not one of fact; whereas we are called on in this case to determine a question of fact, that being, what is a just, fair and equitable apportionment in *this* case. No arbitrary rule can be followed, because it may have been a proper one in some other case. We are not here reviewing the discretion of the city council or of any other board whose actions are binding, unless arbitrary or capricious, but are ourselves establishing, under the facts of the case, the proper basis to be applied to it. As we have already indicated, to our minds a just, fair and equitable distribution of the cost of the approaches to this structure is the same basis as that which the parties themselves have fixed for the payment for the span.

The judgment is therefore reversed.

TOLMAN, C. J., MAIN, MITCHELL, and PARKER, JJ., concur.