[No. 23288.  *En Banc.*  January 26, 1932.]

THE STATE OF WASHINGTON, *on the Relation of The City of Seattle, Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents,* PACIFIC COAST RAILROAD COMPANY, *Appellant.*[1]

*Stratton & Kane* and *McMicken, Ramsey, Rupp & Schweppe,* for appellant.

*L. B. daPonte* (*Thomas Balmer,* of counsel), for respondent Northern Pacific Railway Company.

*Hayden, Merritt, Summers & Bucey,* for respondent Oregon-Washington Railroad & Navigation Company.

[1] Reported in 7 P. (2d) 29.

BEALS, J.—The city of Seattle, as relator, instituted this proceeding by way of an application for a writ of mandate requiring Northern Pacific Railway Company, Oregon-Washington Railroad & Navigation Company and Pacific Coast Railroad Company, corporations, to proceed with the construction of an overhead bridge, or viaduct, together with approaches, across Duwamish avenue, in the city of Seattle, at the intersection of this avenue with Albro place, or to contribute $100,000 towards the cost of such a viaduct, as required by ordinance No. 59,502, passed by the city council of the city of Seattle, which ordinance became effective May 31, 1930.

In this opinion, defendant Northern Pacific Railway Company will be referred to as the "Northern Pacific," Oregon-Washington Railroad & Navigation Company as the "Oregon Co.," and Pacific Coast Railroad Company as the "Pacific Co."

An alternative writ was issued pursuant to the application filed by the city, to which the railroad companies filed separate returns. The trial resulted in findings of fact and conclusions of law, to the effect that the three railroads should contribute $100,000 toward the cost of the overhead crossing, of which amount the Northern Pacific should pay toward the cost of the construction of the span $16,000, the Oregon Co. $18,000, and the Pacific Co. $10,000, and that each of the three companies should pay toward the cost of the construction of the approaches $18,666.66. In other words, the court prorated the cost of the span between the three companies in proportion to the widths of their respective rights of way, but divided the cost of the approaches equally between the three railroads without regard to the widths of their rights of way.

The Northern Pacific and the Oregon Co. having

agreed between themselves to divide equally the aggregate amount apportioned to them, such agreement was carried into the judgment, and these two defendants were jointly and severally required to pay the sum of $71,333.34, while the Pacific Co. was ordered to pay the sum of $28,666.66.

From this judgment, defendant Pacific Co. appeals, contending that the amount which the judgment required it to pay is too large, and that the trial court, in fixing this amount, erred both on the law and the facts.

The following is a brief statement of the situation which led up to this litigation: Duwamish avenue, in the city of Seattle, was laid out in a general northerly and southerly direction, and is sixty feet in width. The municipal street railway track occupies the easterly side of the street, and adjoining the street on the east is the Northern Pacific right of way, sixty-nine and one-half feet in width. To the east of this lies the Pacific Co. right of way, forty-seven and one-half feet wide, and still further to the east lies the Oregon Co. right of way, one hundred feet in width. All of the rights of way bear trackage, over which pass many trains.

The street and these rights of way are substantially on the same level, while immediately to the east of the Oregon Co.'s right of way the ground rises, by a grade so steep as to be impassable to vehicular traffic, in a bluff approximately thirty feet above the level of the street and railroad rights of way. The area to the east of this bluff is thickly settled, and the traffic across the railroads and the street is considerable. Approximately three hundred feet south of the location of the proposed viaduct, Graham avenue crosses the railroads at grade, being reached by a road winding down the bluff.

A little less than two hundred feet west of Duwamish avenue, and parallel thereto, is Stanley avenue, the two avenues being connected by a short street known as Albro place. October 17, 1927, the city council provided for the establishment of nine different streets, one of which, called "Albro place extension," extending Albro place, as theretofore existing, from Duwamish avenue easterly.

The city, deeming necessary the construction of an overhead crossing leading from a point west of Duwamish avenue to the top of the bluff above referred to, opened negotiations with the railroads, looking toward the construction of such a viaduct.

For over twenty years the railroads, jointly, had maintained a watchman at the Graham street crossing, for the purpose of safeguarding traffic. This crossing the city proposed to abandon upon the construction of the overhead viaduct, which it was anticipated would obviate the necessity for the employment of a guard at any railroad crossing in the vicinity.

The railroads contended that the right of the city, in the exercise of its police power, to order a grade separation or overhead crossing at the point referred to, was, under all the circumstances of this particular case, doubtful, but the three companies concerned finally made an offer to contribute $100,000 toward the cost of the improvement, each of the companies agreeing to contribute its equitable proportion. This offer was satisfactory to the city, which has filed no brief on this appeal, not being concerned with the proportion of the $100,000 to be allocated to each of the railroads, none of the latter objecting to the judgment in so far as it provides for the payment of that aggregate amount. The record contains statements to the effect that the cost of the improvement will exceed $100,000, but, if such is the case, it would seem that the city is

willing to absorb the excess. This question is unimportant, and is mentioned merely as a sidelight on the general situation.

The railroads, finding themselves unable to agree upon the proportion of the $100,000 which each should contribute, called this fact to the attention of the city, whereupon the city council passed resolution No. 10,-411, fixing the time for a hearing before the council, sitting as a committee of the whole, with a view to the ascertainment of some equitable apportionment of the railroads' contribution. Each of the railroads was represented at this hearing, and each ratified the prior agreement to contribute between them $100,000, the only matter which was discussed being the apportionment of this amount between the three companies. The Northern Pacific and the Oregon Co. filed with the council a writing, whereby they agreed to pay "their equitable proportion, as determined by the council, such determination to be subject to court review." The Pacific Co., while reaffirming its offer to contribute its equitable proportion of the agreed amount, was not a party to this agreement.

After the hearing above referred to before the council sitting as a committee of the whole, the council enacted ordinance No. 59,502, requiring the railroads to proceed with the construction of the viaduct, or to contribute toward the cost thereof the sum of $100,000, in proportions as fixed in the ordinance. The Northern Pacific and the Oregon Co., being dissatisfied with the apportionment of the expense, in so far as the amounts allocated to them, respectively, were concerned, refused to comply with the ordinance, whereupon the city instituted this proceeding, based upon the ordinance, seeking to enforce the same.

By this ordinance, the city prorated the entire cost of the construction of the viaduct, or, in the alternative,

the contribution of $100,000 in lieu thereof, between the three railroads in amounts proportional to the mean widths of their respective rights of way, as follows: To the Northern Pacific, 32.028 per cent; to the Oregon Co., 46.083 per cent; and to the Pacific Co., 21.889 per cent. In this apportionment, the city did not differentiate between the span and the approaches, but treated the entire cost as a unit. This distribution was satisfactory to the Pacific Co., but, as above stated, was objected to by the other two railroads concerned.

On the trial, the superior court held that, in enacting the ordinance above referred to, the city council was not acting in its legislative capacity under the police power of the city, and that the apportionment made by the council was, therefore, subject to judicial review upon grounds other than any alleged arbitrary or capricious action on the part of the municipality, and that, on the question of fact as to whether or not the apportionment provided for by the ordinance was just, reasonable and equitable, it should be held that the same was erroneous, and that the cost of the span should, as hereinabove set forth, be apportioned between the railroads upon the basis of the widths of their respective rights of way, and that the cost of the approaches should be divided equally between the three railroads concerned.

Appellant Pacific Co. contends that, by the judgment appealed from, it is required to pay $6,777.67 in excess of the proportion of the $100,000 which, in justice and equity, it should contribute; its contention being, in other words, that no distinction should be drawn between the cost of the span and the cost of the approaches, but that the entire cost, or the entire contribution of $100,000, should be prorated between the three railroads on the basis of the widths of their respective rights of way to be crossed by the viaduct.

■ In the first place, appellant contends that the city council, in enacting the ordinance above referred to, was acting in its legislative capacity and in the exercise of the police power of the city, and that the courts will not, in such cases, control or review the legislative discretion of the city council, save for arbitrary and capricious action.

In the case of *State ex rel. Seattle v. Northern Pacific R. Co.*, 128 Wash. 73, 221 Pac. 991 (which will hereinafter be referred to as the *"Yesler Way* case"), this court upheld the action of the city council in requiring the appellant railroad and other railroads to construct an overhead viaduct across their tracks. The ordinance which was the basis of the case cited was undoubtedly enacted pursuant to the legislative authority vested by law in the city council.

One of the railroads required by the city to construct the viaduct appealed from a judgment of the superior court requiring the defendant railroads to proceed with the work in accordance with the city ordinance, and to bear the expense of the viaduct in the proportions set forth in the ordinance, the appellant contending that the apportionment of the expense was unjust and arbitrary. In the course of its opinion, this court said:

"The city endeavored to distribute this cost according to its judgment as to what is fair, just and reasonable. We cannot say that it acted arbitrarily or capriciously. On the other hand, considering the facts in this case, we are of the opinion that the apportionment was eminently fair and just between the respective railways."

The judgment of the superior court directing the railroad companies to comply with the ordinance was affirmed.

In the case cited, the ordinance upon which the city based its application for a writ of mandate was clearly

a proper exercise of the authority vested by law in the legislative machinery of the municipality. The ordinance was, therefore, subject to judicial review only in so far as the same might be held to embody arbitrary or capricious action on the part of the city council. It appears that the ordinance which was the subject matter of the case cited prorated the cost of the span, or the main structure, between the railroads in proportion to the widths of their respective rights of way, and divided the cost of the approaches to the viaduct equally between the four railroad companies concerned.

In the case at bar, the trial court followed the same method in apportioning the $100,000 between the three railroad companies concerned in this action. In this case, the ordinance enacted by the city council, pleaded by the city of Seattle in its application for a writ of mandate herein, established a different method of apportionment between the railroad companies, in that the ordinance treated the approaches and the span as one, and prorated the entire cost between the railroads in proportion to the widths of their rights of way.

In the case of *Oregon-Washington R. & N. Co. v. Pacific Coast R. Co.,* 138 Wash. 430, 244 Pac. 673 (hereinafter referred to as the *"First Avenue South* case"), it appeared that, under the peculiar facts of that case, in adjusting the cost of the construction of an overhead bridge, or viaduct, neither the railroad nor the courts were controlled by any action on the part of the city council, and that it was for the courts to apportion the expense of the improvement, on an equitable basis, as a question of fact. In the case last cited, the trial court prorated the cost of the span in accordance with the widths of the rights of way crossed thereby, but divided the cost of the approaches equally between the railroads. This court, in reversing the judgment, held

that the cost of the approaches should be prorated on the same basis as the cost of the span.

In the course of the opinion in the *First Avenue South* case, this court, discussing the *Yesler Way* case, correctly held that, in the earlier case, the question presented was one of law, and that the discretion of the city council, when exercised pursuant to constitutional and statutory authority, would not be reviewed by the courts, save for arbitrary or capricious action; while in the *First Avenue South* case then being considered the question presented was one of fact, whether or not a just, fair and equitable apportionment had been made by the judgment entered by the superior court.

A careful examination of the record convinces us that, in the case at bar, the city council, in enacting ordinance No. 59,502, was not acting in its legislative capacity; and that, for that reason, the matter of the apportionment of the cost of the grade separation between the railroads was, when submitted to the superior court, a question of fact for judicial determination. The three railroad corporations concerned had agreed with the city that they would contribute $100,-000 toward the cost of the viaduct. They have at all times reaffirmed their willingness to abide by this agreement, the same being manifestly a compromise between the railroads and the city, by which the question as to the right of the city, under the police power, to compel the railroads to erect a crossing themselves and entirely at their own expense, was not litigated.

Had the city undertaken to act pursuant to its legislative authority, its apportionment of the cost of the improvement between the railroad companies, assuming its right to enforce the grade separation, would have been subject to judicial review only for arbitrary or capricious action. On this point, we agree with

respondents, and hold that the city did not act in the exercise of its legislative authority.

The question here presented, then, being one of fact, and resolving itself into the matter of the equitable apportionment between the railroads of the cost of the grade separation, we have examined the evidence, bearing in mind the rule that the findings of the trial court on disputed questions of fact will not be disturbed on appeal, except where it clearly appears that the same are erroneous. As stated in deciding the *First Avenue South* case, the court in the *Yesler Way* case, in determining the questions there presented, was not called upon

" . . . to determine for itself what was a just, fair and equitable distribution. The sole thing that the court could do, was to say whether the distribution made by the city council was so arbitrary and unfair that it could not be sustained. Two entirely different questions."

When the question was presented to this court as one of fact in the later of the two cases cited, it was decided that the just, fair and equitable distribution of the costs of the approaches was that the same be apportioned on the same basis as the cost of the span, and in proportion to the widths of the rights of way.

While the facts in the case at bar differ from those presented in the *First Avenue South* case, and while there are elements present in each case which do not appear in the other, we are disposed to adhere to the rule therein laid down, and to hold that a just and equitable distribution of the $100,000 to be contributed by the railroads would be such an apportionment as considers the cost of the approaches and of the span as one, and prorates the same between the appellant and the respondents on the basis of the widths of their respective rights of way.

The record contains much evidence, as to the nature of the grade crossings at or in the vicinity of the proposed grade separation, concerning the number of trains which pass over the several tracks owned by the respective railroads, as to the saving which will accrue to the railroads by doing away with the watchman at Graham street, and other matters of kindred nature. All these matters have been considered, together with the arguments submitted by counsel for respondents. We are, however, not convinced that the rule laid down in the *First Avenue South* case should be departed from, when the courts are called upon to determine, as a question of fact, a just, fair and equitable proportion of the cost of an overhead crossing, to be paid by parties situated as are respondent railroads and appellant here.

The judgment appealed from is reversed, with instructions to enter a new judgment in accordance with this opinion. Appellant's costs will be taxed against the respondent railroad companies, and not against the city of Seattle.

TOLMAN, C. J., PARKER, MAIN, MITCHELL, HERMAN, and BEELER, JJ., concur.

MILLARD, J., concurs in the result.

HOLCOMB, J. (dissenting)—I concur in the decision by the majority that the city council was not acting legislatively, under the police power, in this case, and that the apportionment was a matter of judicial review.

However, the facts in this case were undisputed, and I construe the resulting equities from them as did the trial judge. After holding that it was not just to require one railroad to construct a safeway across the right of way or any part of the right of way of another railroad to remove the menace to the traffic at the

crossing, and referring to the fact that all three rail-roads had for years equally divided the expense of maintaining a watchman at the crossing, and that, when a railroad pays for making a safe passage over its own right of way, it ought not to be called to contribute to that part of the bridge over its neighbor's right of way, he continued:

"But this reasoning does not apply beyond the limits of the rights of way. The crossing above the rights of way being made safe, the railroad must make that safe overhead crossing accessible to traffic. This can be done only by approaches. Approaches to the overhead crossing are as necessary as the overhead crossing. Each of the three railroads in this case owes the duty not only to make the crossing over its right of way safe, but to make that overhead crossing accessible. This is a common duty. Approaches are as necessary to one as to the other. Neither one of these overhead crossings can be reached without approaches, and the approach to one of these overhead crossings is the approach to all three. Manifestly, the three should contribute equally to the construction of the approaches. . . . The apportionment of costs for approaches on any basis other than equally would likewise in this case be unjust and arbitrary."

In my opinion, therefore, the apportionment made by the trial judge was just and equitable.

I consider that the judgment of the trial judge should be affirmed, and dissent from the reversal thereof.